LOUIS M. BUBALA III, ESQ
Nevada Bar # 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone: 775-786-5000
Fax: 775-786-1177
Email: lbubala@jonesvargas.com

Attorneys for Cal By-Products

**Electronically Filed on September 24, 2010**

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

A & A DAIRY, a California general Partnership,

Debtor.

Case No. BK-10-52539-gwz

Chapter 11

**RESPONSE TO DEBTOR'S MOTION TO APPROVE CAL BY-PRODUCTS AS CRITICAL VENDOR AND TO RATIFY LIEN GRANTED DURING PREFERENCE PERIOD, WITH CERTIFICATE OF SERVICE**

Hearing Date: 10/6/10
Hearing Time: 10:00 a.m.

Cal By-Products ("CBP") responds to Debtor's motion to approve CBP as a critical vendor (Ct. Dkt. #30, filed July 27, 2010). CBP concurrently files the supporting declarations of Lyle W. Ens, credit manager of CBP; Roger Dunn, salesman and former senior partner for CBP; and Louis M. Bubala III, bankruptcy counsel for CBP in this case. Debtor's representatives made many of the same comments and representations to Lyle Ens and Roger Dunn, and both could testify truthfully to them if called to do so. For brevity's sake, Mr. Dunn's declaration is limited to certain postpetition discussions about CBP's designation as a critical vendor.

## I. Introduction

CBP seeks what it was promised and is entitled to based on its agreements with the Debtor to serve as a critical vendor. CBP has supplied the Debtor with feed during good times and bad over the past twenty years. The relationship was one of trust, where one knew the other would honor its word. So when Debtor offered to designate CBP as a critical vendor in the bankruptcy

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

in order to continue to receive feed to keep its cattle alive, CBP agreed and fully expected to receive the promised treatment as a critical vendor.

The situation arose in June when Debtor's other feed supplier announced it no longer would supply the Debtor. Debtor had 1,500 head of cattle that it needed to feed in bankruptcy as part of ongoing, operating dairy farm. Debtor said it did not have sufficient funds to come current on CBP's debt. Instead, Debtor induced CBP to continue to deliver feed as a critical vender by offering to (1) provide a note and deed of trust for the existing debt in excess of $250,000, and (2) continue to pay down the prepetition debt after the bankruptcy filing with supplemental amounts paid along with payments for postpetition feed shipments. Debtor stated that it would need ongoing feed deliveries to operate the dairy throughout the reorganization, so it would gradually pay CBP—as a critical vendor—with these supplemental payments during the reorganization. Debtor already had been making voluntarily supplemental payments in the six months leading up to the bankruptcy, and the proposal maintained the status quo. CBP agreed to Debtor's proposal and continued to ship feed both before and after the bankruptcy filing on June 29; Debtor provided the note and deed of trust, and continued to pay down the prepetition debt.

Despite the agreement to designate CBP as a critical vendor, Debtor did not file the critical vendor motion as a first-day motion. CBP repeatedly requested that Debtor file the motion, which did not happen until a month later. During that delay, Debtor's plan to reorganize with continued dairy operations fell by the wayside as sold off its livestock. Debtor stopped ordering feed from CBP because the reorganization strategy no longer involved an active dairy ranch with cattle.

Wells Fargo makes much of these facts, but without the context. Wells Fargo ignores the fact that Debtor's other feed supplier refused to provide any more feed in the days before the bankruptcy—necessitating the agreement with CBP for continued feed deliveries. Wells Fargo also ignores that the Debtor induced CBP to continue supplying the feed with the promise of not just the note and deed of trust, but with continued payments throughout the bankruptcy because Debtor would continue to operate the dairy. These were the facts leading up to the bankruptcy.

But for CBP's agreement to continue to supply feed based on its designation as a critical vendor, Debtor had no source of feed to keep its cattle alive and in shape to bring top dollar when they were ultimately auctioned.

## II. Factual History

CBP has supplied feed to Debtor for nearly twenty years. Decl. of L. Ens, filed concurrently. There are very few companies who can or will supply feed in the Fallon market because of the logistics of delivery there. *Id.* CBP typically delivered two to three truckloads a week with 25 tons of corn for Debtor's dairy. *Id.*

Debtor's financial condition took a turn for the worse in June 2010. CBP was contacted by on June 18 by Dennis Morrison with California Ag Commodities, the dairy's only other feed supplier. *Id.* Mr. Morrison said his company had not been paid for past deliveries, announced he would not be delivering additional feed to the dairy, and urged CBP to also cut off its feed supply until the dairy brought them current. *Id.* Debtor has confirmed that Mr. Morrison did, in fact, stop making feed deliveries to the dairy prepetition. Response Ex. 1, 8/4/10 Darby-Bubala email. (Wells Fargo asserts in its opposition that Mr. Morrison resumed payments postpetition based on a spreadsheet from Debtor. However, the spreadsheet is not authenticated and inadmissible.)

CBP was seriously concerned because the dairy owed it approximately $250,000, so it sought assurances from the dairy in exchange for continued feed deliveries. Decl. of L. Ens. Misty Alegre, who handled the dairy's books, admitted that the company was going to file for bankruptcy. *Id.* However, she assured that CBP that it would be paid for the outstanding balances, including the most recent feed shipments by including them in the petition. *Id.* & Decl. Ex. 1, 6/18/10 L. Ens notes; Decl. Ex. 2, 6/19/10 M. Alegre note to L. Ens.

The dairy immediately put CBP in touch with the dairy's bankruptcy counsel, who made a two-prong offer if CBP would continue to supply feed to the dairy as a critical vendor. *Id.* First, the dairy would provide a note and deed of trust secured by the farm for the prepetition debt owed to CBP. *Id.* Debtor's counsel immediately prepared the papers, which were executed on June 24 and recorded on June 25. *Id.* & Decl. Exs. 3-4. Debtor also agreed to arrange for prompt

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

payment of the prepetition debt throughout the bankruptcy, with supplemental payments for prepetition debt made with the payments for postpetition deliveries. *Id.* CBP agreed to continue to supply feed to the dairy as a critical vendor under these terms. *Id.* (CBP acknowledges that the motion does not discuss payment of the prepetition debt, and that Debtor and CBP have differing recollections of the negotiated terms.)

Debtor filed for bankruptcy on June 29. In the first month of the bankruptcy, CBP shipped ten truckloads of feed consisting of 250 tons of corn (valued at nearly $54,000) to feed Debtor's cattle. *Id.*

Despite the absolute necessity for the dairy to feed cattle that would have permitted a first-day, critical vendor motion under Rule 6003(b), Debtor did not file a critical vendor motion until July 27, 2010 (Ct. Dkt. #30). CBP did not make immediate demands for the motion or reclamation under Section 503(c)(9) based on its long-term relationship with Debtor and Debtor's agreement to designate CBP as a critical vendor, provide the security interest and pay the prepetition debt. Decl. of L. Ens.

On July 1, 2010, CBP spoke with Dan Alegre, who advised that Debtor would pay for postpetition deliveries as well make additional payments for prepetition debts on July 15. *Id.* & Decl. Ex. 5, 7/1/10 L. Ens notes. However, CBP had not received any court papers concerning its status as a critical vendor. CBP made repeated inquiries about the status of the designation to Dan, Darin and Misty Alegre. Decl. of R. Dunn. Each of them emphatically responded that CBP already had been designated as a critical vendor and took offense that CBP was questioning them about it. *Id.* In fact, Misty Alegre advised CBP that the postpetition payments should be applied to reduce the prepetition debt because CBP already wwas a critical vendor. *Id.*

CBP followed up with Debtor's counsel on July 14 and July 20 and was told that the critical vendor motion would be held on July 23. Decl. of L. Ens. & Decl. Ex. 6, 7/20/10 Darby-Ens email chain. But when CBP did not receive a copy of the motion or notice of the hearing, it retained Jones Vargas on July 21 to represent it in this case. *Id.*

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

During this time period, Debtor's plan of reorganization changed. Debtor was accepted in the Cooperatives Working Together Herd Retirement Program operated by the National Milk Producers Federation ("CWT"). In exchange for promptly sending its cattle to slaughter, Debtor received a payment from CWT for reducing the industry's dairy cattle. Although Misty Alegre advised that Debtor would need additional feed to sustain the cattle leading up to the sale and their removal from the dairy, Debtor did not order any additional feed after July 23. Decl. of. R. Dunn.

On July 22, Debtor advised that it had not yet filed the critical vendor motion because it was working on the terms of a cash collateral order with debtor's senior secured lender, Wells Fargo. Decl. of L. Bubala, filed concurrently. Additionally, Debtor explained that the CWT payments would generate additional cash depending on negotiations with Wells Fargo. *Id.* In any event, Debtor stated that it had secured a commitment from Wells Fargo for more than enough cash to pay CBP in full as part of the critical vendor motion. *Id.* Debtor reaffirmed its commitment to the critical vendor motion. *Id.*

Debtor filed the motion on July 27. The motion requests (1) CBP be declared a critical vendor, and (2) that note and deed of trust provided by debtor to CBP days before the bankruptcy filing be ratified because of CBP's role as a critical vendor. CBP, Wells Fargo and Debtor were unable to reach any agreement about payments to CBP or its status as a critical vendor.

## III. Legal Standard

"Many circumstances may exist which may make is necessary and indispensable to the business of the road and the preservation of the property, for the receiver to pay pre-existing debts." *Miltenberger v. Logansport*, 106 U.S. 286, 311 (1882). More recently, courts have relied upon the "Doctrine of Necessity" and the court's powers under 11 U.S.C. § 105(a) to authorize payment of a debtor's prepetition obligations to preserve the debtor's value. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

The Ninth Circuit initially read the necessity of payment rule narrowly. *In re B&W Enters., Inc.*, 713 F.2d 534, 537 (9th Cir. 1983). But the circuit has since accepted the doctrine that the unequal treatment of prepetition debt is permitted in order to preserve the debtor's value. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987); *In re Hines*, 147 F.3d 1185 (9th Cir. 1998). This Court has granted critical vendor motions in the past on these legal grounds. *See, e.g., In re Skye Int'l, Inc.*, Case No. 09-54485-GWZ (Bankr. D. Nev. Dec. 23, 2009, and Feb. 26, 2010); *In re Washington Group Int'l, Inc.*, Case No. 01-31627-GWZ (Bankr. D. Nev. May 14, 2001); *In re Lindemann Produce, LLC*, Case No. 00-32672-GWZ (Bankr. D. Nev. Sept. 15, 2000); *In re Air Transport, LLC*, Case No. 98-30248-GWZ (Bankr. D. Nev. Feb. 9, 1998); *In re National Airlines, Inc.*, Case No. 00-19258-LBR (Bankr. D. Nev. Dec. 6, 2000).

The Ninth Circuit has not articulated a precise standard to evaluate a critical vendor motion, but Judge Marlar adopted the test articulated by Judge Lynn. "First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim." *In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. D. Ariz. 2008), *quoting In re CoServ, LLC*, 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002).

## IV. Argument

CBP is in agreement that it is a critical vendor. Debtor's other supplier refused to provide additional feed, and there are no other viable sources to supply the necessary feed in Fallon. Decl. of L. Ens. Debtor absolutely required feed for its cattle to preserve the value of Debtor's estate, and the delivery of that feed entitles it to the agreed upon status as a critical vendor. *Cf. In re Humboldt Creamery, LLC*, Case No. 09-11078 (Bankr. N.D. Cal. Ct. Dkt. #25, filed April 23, 2009) (Jaroslovsky, J.), *attached as* Response Exhibit 2 (authorizing critical vendor payments to farmer co-op members to sustain their milking cows). Without CBP's agreement to continue to supply feed, Debtor did not have another supplier necessary to maintain its cows either for the

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

original plan of a reorganized dairy farm or the final outcome of an auction of the cattle—and CBP's continued feed delivery kept the cattle in top shape to generate the maximum revenue from the auction.

CBP satisfies all the standards articulated by Judge Marlar and Judge Lynn. First, it was critical that the Debtor deal with the CBP. It had no other source of feed for its cattle herd on the eve of bankruptcy. Second, Debtor risked the probability of harm unless it dealt with CBP. The feed was necessary to sustain the cattle. Absent CBP's continued deliveries, the cattle may not have been accepted in the CWT program, they may not been in the proper condition to participate in the auction, or they may have sold at lower prices. Alternatively, Debtor obtained a large economic advantage from the continued food supply as the auction generated approximately $2 million in funds for the debtor, a benefit that far outweighs the security interest granted to CBP and payments on its prepetition debt.

Finally, the critical vendor motion was the only practical or legal alternative to deal with CBP and assure the dairy continued to receive feed. Debtor did not have sufficient funds to bring CBP current as a critical vendor, so it made alternative arrangements with the security interest and debt paydown. CBP agreed to the terms offered and delivered the feed required by the Debtor until it auctioned the cattle.

Debtor's motion should be granted notwithstanding Wells Fargo's objection. As the Third Circuit held, "It is evident that the payment made under the 'necessity of payment' rule is to the interest of all parties … because such payment will facilitate the continued operation of the [debtor]. Indeed, the interruption or termination of the [debtor's] service can have an equally detrimental effect upon the secured creditors as upon the general creditors." *In re Lehigh*, 657 F.2d at 581. In this case, Wells Fargo benefited from CBP's continued deliveries of feed before and after the bankruptcy because the cattle needed to be fed. They eventually sold for a greater price than they would have without the continued feed delivery. Since Wells Fargo finds itself in a better position, it should not be allowed to upset the agreement whereby CBP continued to supply feed as the Debtor sought to designate CBP as a critical vendor.

DATED this 23rd of September, 2010

JONES VARGAS

By: /s/ Louis M. Bubala III
LOUIS M. BUBALA III, ESQ

Attorneys for Cal By-Products

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**CERTIFICATE OF SERVICE**

1. On September 24, 2010, I served the following document(s):

RESPONSE TO DEBTOR'S MOTION TO APPROVE CAL BY-PRODUCTS AS CRITICAL VENDOR AND TO RATIFY LIEN GRANTED DURING PREFERENCE PERIOD, WITH CERTIFICATE OF SERVICE

2. I served the above-named document(s) by the following means to the persons as listed below:

■ a. **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

CANDACE C CARLYON on behalf of Creditor WELLS FARGO BANK, N.A.
wapplegate@sheacarlyon.com, ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rmsmith@sheacarlyon.com;ltreadway@sheacarlyon.com

KEVIN A. DARBY on behalf of Debtor A & A DAIRY
kevin@darbylawpractice.com, tricia@darbylawpractice.com;melissa@darbylawpractice.com;matthew@darbylawpractice.com;kendal@darbylawpractice.com;nicole@darbylawpractice.com

MARIA K. PUM on behalf of Creditor WELLS FARGO BANK, N.A.
mpum@hcesq.com

U.S. TRUSTEE - RN - 11
USTPRegion17.RE.ECF@usdoj.gov

■ b. **United States mail, postage fully prepaid** (list persons and addresses):

WALCO INTERNATIONAL
c/o Jennie Norcutt
150 Industrial Way
Fallon, NV 89406

WESTWAY TRADING CORPORATION
c/o David Wright
365 Canal Street, Ste. 2900
New Orleans, LA 70130

CALIFORNIA AG COMMODITIES
Dennis W. Morrison
15095 Kobbuntie Court
Red Bluff, CA 96080

□ c. **Personal Service** (list persons and addresses):
I personally delivered the document(s) to the persons at these addresses:

□ d. **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

□ e. **By fax transmission** (list persons and fax numbers):

□ f. **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 24th day of September, 2010.

L. Bubala — Name

/s/L. Bubala — Signature

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

# Exhibit 1

# Exhibit 1

**Bubala III, Louis M.**

**From:** Kevin Darby [kevin@darbylawpractice.com]
**Sent:** Wednesday, August 04, 2010 11:11 PM
**To:** Bubala III, Louis M.
**Subject:** RE: A&A Critical Vendor Motion

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

My understanding is that Dennis cut A&A off shortly before we approached your client with the lien/critical vendor proposal. It was definitely *before,* my only question is how long before. I can get that date for you.

Respectfully,

KEVIN A. DARBY, ESQ.
**DARBY LAW PRACTICE, LTD.**
4777 Caughlin Parkway
Reno, NV 89519
Tel.: 775.322.1237
Fax: 775.996.7290

The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege. It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail. If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email. Thank you.

---

**From:** Bubala III, Louis M. [mailto:lbubala@jonesvargas.com]
**Sent:** Wednesday, August 04, 2010 10:19 PM
**To:** Kevin Darby
**Subject:** RE: A&A Critical Vendor Motion

One thing that would be helpful to know is if & when Dennis Montgomery (I think that's his name, on the committee) cut off feed shipments to A&A. He approached CBP prepetition to try to boycott A&A, and we ignored him. But my only knowledge is second hand, so anything you can tell me about that situation is helpful.

---

**From:** Bubala III, Louis M.
**Sent:** Wednesday, August 04, 2010 10:14 PM
**To:** Kevin Darby
**Subject:** RE: A&A Critical Vendor Motion

Thanks. Yep, I know I still have the committee to deal with. I believe you are current on postpetition shipments. Just don't want Dan & Darren to overextend themselves to try to make their creditors happy by paying us before there's an order.

---

**From:** Kevin Darby [mailto:kevin@darbylawpractice.com]
**Sent:** Wednesday, August 04, 2010 10:13 PM
**To:** Bubala III, Louis M.
**Subject:** RE: A&A Critical Vendor Motion

Hey Lou- I hope all is well. I definitely won't withdraw the motion and, yes, we will support you getting paid in full from a carve out from CWT. I also believe the critical vendor motion will be necessary to facilitate this. Assuming you can get a deal with the Bank, we can modify the motion and get it noticed for hearing. I think the only hurdle at that point would be the unsecured creditors committee. Also, under our cash collateral stipulation, the Debtor should be authorized to immediately pay you in full for all post petition invoices. Let me know if there is any hold up in getting those paid. I believe the Alegres have remained relatively current with your client post-petition and they have been directed to make sure all post-petition obligations are timely paid. I hope this helps. Let me know if you have any questions or concerns.

Respectfully,

KEVIN A. DARBY, ESQ.
**DARBY LAW PRACTICE, LTD.**
4777 Caughlin Parkway
Reno, NV 89519
Tel.: 775.322.1237
Fax: 775.996.7290

The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege. It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail. If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email. Thank you.

---

**From:** Bubala III, Louis M. [mailto:lbubala@jonesvargas.com]
**Sent:** Wednesday, August 04, 2010 5:05 PM
**To:** Kevin Darby
**Subject:** RE: A&A Critical Vendor Motion

Kevin,

I talked this afternoon with Christine Kenmore, the bank's lead counsel in California, about agreeing to a carve out of the excess CWT funds to pay Cal By-Products as a critical vendor. She is going to talk with Wells Fargo and get back to me. I hope you won't withdraw the motion yet. Hopefully we can reach a deal with the bank and the terms in the motion can be amended.

Also, as a side note, the Alegres are very insistent to our client reps that Cal By-Products already is a critical vendor and A&A is going to pay us in full, including additional post-petition payments this month. I can't say if it is puffery by them to try to smooth things over with Cal By-Products or if the Alegres haven't talk to you about it. I don't know how A&A can make any more payments unless (1) we ship more feed, or (2) the court enters an order.

Thanks,
Lou

---

**From:** Bubala III, Louis M.
**Sent:** Wednesday, August 04, 2010 1:52 PM
**To:** Kevin Darby
**Subject:** FW: A&A Critical Vendor Motion

Can you call me on this? 788-2219

---

**From:** Chubb, Jan
**Sent:** Wednesday, August 04, 2010 11:44 AM

**To:** Bubala III, Louis M.
**Subject:** FW: A&A Critical Vendor Motion

---

**From:** Candace Carlyon [mailto:CCarlyon@sheacarlyon.com]
**Sent:** Tuesday, August 03, 2010 5:41 PM
**To:** Kevin A Darby, Esq.
**Cc:** Christine Kenmore; Wendy Applegate; Chubb, Jan
**Subject:** A&A Critical Vendor Motion

Kevin, are you planning to withdraw the critical vendor motion? If not, could you please advise of the hearing date so that we can calendar our opposition date? Thanks! C

Candace C. Carlyon, Esq.
Shea & Carlyon, Ltd.
701 Bridger, Suite 850, Las Vegas, NV 89101
Telephone: 702.471.7432
Facsimile: 702.471.7435.
E-mail:  ccarlyon@sheacarlyon.com
Website: http://www.sheacarlyon.com
 Confidentiality Notice

This message and any attachments are for the named person's use only. The message and any attachment may contain confidential, proprietary, or privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, please immediately notify the sender, delete all copies of it from your system, and destroy any hard copies of it. Please do not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient.  Further, this message shall not be considered, nor shall it constitute an electronic transaction, non-paper transaction, and/or electronic signature under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act.  Thank you.

---

**From:** Kevin A Darby, Esq. [mailto:darbylawpractice@gmail.com]
**Sent:** Fri 7/30/2010 12:16 PM
**To:** Bret Bartolotta
**Cc:** <kevin@darbylawpractice.com>; Maria Pum; Christine Kenmore; Wendy Applegate; <Benjamin.D.Casey@wellsfargo.com>; <Cynthia.L.West@wellsfargo.com>; Candace Carlyon; Tricia M. Darby
**Subject:** Re: Draft of Stipulation

It looks good to me. I can have Tricia sign for me as soon as you get bank approval.

Sent from my iPhone

On Jul 30, 2010, at 12:05 PM, "Bret Bartolotta" <bbartolotta@hcesq.com> wrote:

> Kevin:
>
> Attached please find a draft of the Stipulation with all referenced exhibits attached thereto. Please note that in the interest of time, this draft if being sent out prior to Wells Fargo's having reviewed or approved same and thus, the draft is not final and is subject to change. Please review and let us know if you have questions or comments.
>
> Best regards,
>
> Bret A. Bartolotta, Esq.
> **HENDERSON, CAVERLY, PUM & CHARNEY LLP**
> P.O. Box 9144 (all US Mail)

16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, CA  92067
Tel:  (858) 756-6342 x117
Fax:  (858) 756-4732
Email:  bbartolotta@hcesq.com

<Stipulation 7-29-20 CWT and 363 (3) w. Exhibits.pdf>

# Exhibit 2

Exhibit 2

Entered on Docket
April 23, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

HUMBOLDT CREAMERY, LLC, No. 09-11078

Debtor(s).
______________________________________/

Memorandum on Request to Immediately Pay Certain Priority Claims

Debtor Humboldt Creamery, LLC, filed its Chapter 11 petition on April 21, 2009. One day later, it sought permission to pay approximately $1.7 million in prepetition debt to Humboldt Creamery Association, a non-profit agricultural cooperative composed of 40 farmer-members who have an average herd size of 300 milking cows.[1] Humboldt Creamery Association also owns 75% of the debtor. The U.S. Trustee objected, arguing that the court should defer a decision until a creditors committee has been formed.

The request is governed by Rule 6003(b) of the Federal Rules of Bankruptcy Procedure. This rule does not permit the payment of a claim which arose prepetition for the first 20 days of a bankruptcy unless it is necessary to avoid immediate and irreparable harm.

The decision to allow the payments now is not an easy one for the court. The U.S. Trustee is entirely correct in arguing that there is a significant risk of injustice if the court allows payment on

[1]Leave is also sought to pay a small portion to non-Association farmers.

prepetition debt immediately upon the commencement of a bankruptcy case, when all parties except the unsecured creditors have had a chance to organize, plan their strategies and prepare their arguments to the court. This concern is especially compounded in this case since the payee is an insider of the debtor.

However, in this case the court is convinced that immediate and irreparable harm will be suffered by the debtor if the payments are not allowed. The payments are for milk clearly delivered during the 20 days before bankruptcy, and are therefore entitled to priority under § 503(b)(9) of the Bankruptcy Code.[2] While the Association is an insider, it is composed by small dairy farmers who cannot be expected to finance the debtor's operations and cannot afford to wait for payment. The court fears that any disruption of payment to the farmers would seriously prejudice the debtor's ability to continue normal operations while in Chapter 11.[3]

Lastly, the court believes that it can mitigate any possible damage to the bankruptcy estate by providing that the payments shall be subject to recovery by the estate to the extent they prove to be improvident or result in a higher dividend than the recipient is entitled to receive at the conclusion of the case. Since the Association and its members will continue to do business with the debtor as a result of payment, recovery should not prove overly difficult if future events show that the payments should not have been authorized.

For the above reasons, the debtor will be granted leave to make the payments as prayed and may submit a form of order to that effect.

---

[2]Nothing in the Bankruptcy Code forbids payment on a prepetition debt before confirmation of a plan, and Rule 6003(b) specifically contemplates such payments. The court concludes that prepetition debt, and especially a priority debt, may be paid before confirmation if in the best interests of the estate.

[3]The court notes that Rule 6003 allows the court to authorize payments on prepetition debt if necessary to avoid immediate and irreparable harm, but does not require that such harm be to the bankruptcy estate. The court finds that a delay in payment would result in immediate and irreparable harm to both the dairy farmers and the debtor, and for this reason authorizes payment now.

Dated: April 23, 2009

Alan Jaroslovsky
U.S. Bankruptcy Judge