LAW OFFICES OF AMY N. TIRRE,
A Professional Corporation
AMY N. TIRRE, ESQ.  #6523
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail:  amy@amytirrelaw.com

Electronically Filed on October 20, 2010.

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>A & A DAIRY, a California general partnership,<br><br>    Debtor. | Case No. BK-N-10-52539-GWZ<br><br>Chapter 11<br><br>**COMMITTEE'S OPPOSITION TO DEBTOR'S APPLICATION TO APPROVE CAL BY-PRODUCTS AS CRITICAL VENDOR AND RATIFY LIEN GRANTED DURING PREFERENCE PERIOD**<br><br>Hearing Date: November 3, 2010<br>Hearing Time:  2:00 p.m. |

The Official Committee of Unsecured Creditors ("the Committee") hereby files its Opposition to Debtor's Application to Approve Cal By-Products as Critical Vendor and Ratify Lien Granted During Preference Period ("Motion") filed by Debtor, A&A Dairy, a California general partnership, AS Docket No. 30 filed on July 27, 2010.  This Opposition is supported by the following Points and Authorities, pleadings and papers on file herein as well as any arguments of counsel at a hearing on this matter.

//

//

-1-

# POINTS AND AUTHORITIES

## Procedural Background

In its Motion, Debtor seeks to validate a preferential deed of trust granted by Debtor to secure a debt to Cal By-Products, a feed supplier, in the approximate amount of $240,000. Debtor seeks to validate the granting of this deed of trust against the Debtor's real property on the grounds that Cal By-Products was a critical vendor and Debtor needed to induce Cal By-Products to continue to supply feed to the Debtor because a continued food supply to the dairy herd was essential.

Debtor's Motion does not address any agreement between Debtor and Cal By-Products to make catch-up payments on the pre-petition debt in addition to the granting of the deed of trust. However, Cal By-Products' *Response to Debtor's Motion to Approve Cal By-Products as Critical Vendor and to Ratify Lien Granted During Preference Period*, Docket No. 68, filed on September 24, 2010, indicates that there was such an offer from Debtor to Cal By-Products (Docket No. 68 at 2:8-10), but that there was later no agreement as to terms (Docket No. 68 at 5:17-18).

In the *Opposition of Wells Fargo Bank to Motion to approve Cal By-Products as Critical Vendor and to Ratify Lien Granted During Preference Period*, Docket 62, filed on September 21, 2010, Wells Fargo asserts that Debtor paid Cal By-Products $60,000 on a post-petition basis in excess of the value of the feed supplied to the Debtor on a post-petition basis. Docket 62 at ¶G;3:19-23.

In the Declaration of Lyle Ens in support of Cal By-Products' Response, he states that Cal By-Products supplied 250 tons of corn to feed Debtor's cattle valued at $54,000 on a post-petition basis. Declaration of Lyle Ens, Docket No. 69, filed on September 24, 2010 at ¶15.

On this record, there are factual issues that clearly need to be resolved. Moreover, the Committee objects to the relief sought on several grounds.

-2-

## Argument

### I.  Debtor Has Not Satisfied the Test for Critical Vendor Payments

In *In re Kmart Corp.,* 359 F.3d 866 (7th Cir.2004), the Seventh Circuit addressed "critical vendor" motions and affirmed the district court's reversal of the bankruptcy court's critical-vendors order that granted Kmart "open-ended permission to pay any debt to any vendor it deemed 'critical' in the exercise of unilateral discretion, provided that the vendor agreed to furnish goods on 'customary trade terms' for the next two years." *Id.* at 868-69. The bankruptcy court order cited § 105(a) but did not offer any explanation or legal analysis to support its order. *Id.* at 869. Pursuant to the authority granted to it by the bankruptcy court, Kmart paid, in full, the prepetition unsecured claims of 2,330 suppliers in the total amount of about $300 million. The payments came out of the $2 billion debtor-in-possession ("DIP") financing authorized by the bankruptcy court. The DIP lenders were granted super-priority in post-petition assets and revenues. Creditors not considered "critical" were not paid and ultimately received about 10 cents on the dollar, mostly in stock of the reorganized Kmart. Id. One of the non "critical" creditors appealed the critical-vendors order to the district court. Concluding that neither § 105(a) nor the "doctrine of necessity" authorized the payment of the prepetition claims, the district court reversed. *Id.*

The Seventh Circuit affirmed the district court. In doing so, the court agreed with the district court that neither § 105(a) nor the "doctrine of necessity" authorized the payment of prepetition unsecured claims, stating that § 105(a) "does not create discretion to set aside the Code's rules about priority and distribution" and called the "doctrine of necessity" "just a fancy name for a power to depart from the Code." *Id.* at 871. The court also rejected the debtor's suggestions that § 364(b) and § 503 of the Bankruptcy Code provide a statutory basis for paying "critical vendors." *Id.* at 872. The court noted that while § 364 authorizes a debtor to obtain credit with court approval, it "has nothing to say about how the money will be disbursed or about

-3-

priorities among creditors." *Id*. Regarding § 503, relating to administrative expenses, the court found no basis for elevating a prepetition claim to a postpetition administrative claim:

> Pre-filing debts are not administrative expenses; they are the antithesis of administrative expenses. Filing a petition for bankruptcy effectively creates two firms: the debts of the pre-filing entity may be written down so that the post-filing entity may reorganize and continue in business if it has a positive cash flow. Treating pre-filing debts as "administrative" claims against the post-filing entity would impair the ability of bankruptcy law to prevent old debts from sinking a viable firm.

*Id.* The court's rejection of §§ 364 and 503 as statutory bases for authorizing critical vendor payments left it with consideration of § 363(b)(1), the section of the Code dealing with the use of property of the estate "other than in the ordinary course of business." The appeals court, however, did not reach a conclusion as to whether § 363(b) provided a bankruptcy court with authority under the Code to authorize the payment of prepetition "critical vendor" claims because it found that even if § 363(b) could provide such authority, in principle, the bankruptcy court could not have authorized it under the facts of the Kmart case. *See id.* (stating that "[w]e need not decide whether § 363(b)(1) could support payment of some pre-petition debts, because this order was unsound no matter how one reads § 363(b)(1)").

The court suggested that if authority to pay critical vendors could be found in § 363(b)(1), the debtor would have had to show that (1) the critical vendor would have ceased doing business with the debtor absent the payment of the creditor's prepetition claim, (2) there was no other alternative to the payment of the prepetition claim (such as the issuance of a letter of credit to assure vendors of payment for postpetition deliveries or services), i.e., that "discrimination among unsecured creditors was the only way to facilitate a reorganization," and (3) "*disfavored creditors were at least as well off as they would have been had the critical-vendors order not been entered.*" *Id.* at 873-74 (emphasis added).

Although mentioning the first two factors, the court seemed to hang its hat on the third

-4-

factor in affirming the district court's reversal of the bankruptcy court's critical-vendors order: "Even if § 362(b)(1) allows critical-vendors orders in principle, preferential payments to a class of creditors are proper only if the record shows the prospect of benefit to the other creditors. This record does not, so the critical-vendors order cannot stand." *Id.* at 874. Thus, although the Seventh Circuit did not find that the entry of a critical vendors order was proper in *Kmart*, it left open the possibility that in another case under different circumstances such an order might be authorized under § 363(b)(1).

Since *Kmart*, bankruptcy courts have found that critical vendor orders were appropriate under the facts of those cases. For example, in *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bank. M.D.Fla. 2005), the bankruptcy court cited *Kmart* and found that the evidence was sufficient to support the critical vendor payments under the test enunciated in *Kmart*:

> Under the facts of this case, the Court is satisfied that a sound business justification exists for the critical vendor payments as permitted by this Memorandum Decision and Order because the critical vendors refuse to do business with the Debtors absent critical vendor status. The Court is also satisfied that the payments to the critical vendors are necessary to the reorganization process because the materials and services supplied by the critical vendors are necessary for the Debtors to maintain their business operations. The Court further finds that the terms of the payments to the critical vendors were negotiated at arms-length, and the Debtors' estates will be improved for the benefit of all creditors--including the disfavored creditors--as a result of this Court's authorization of the payments to the critical vendors as discussed below. Accordingly, the Court will grant critical vendor status to the critical vendors and permit the payments to the critical vendors subject to the terms and for the reasons set forth below.

While the Committee also recognizes that this Court has issued critical vendor orders in other cases as set forth in Cal By-Products' Response, the record is insufficient in this case to establish all three prongs of the test enunciated in *Kmart*.

Here, the necessity for Cal By-Products to continue to supply feed to the Debtor has clearly evaporated in light of auction sale of Debtor's herd on July 31, 2010. The Committee recognizes that hindsight is clearly 20/20 and that if necessity is determined on the date of the filing of the

petition, then Debtor and Cal By-Products' position may be well-taken. Nevertheless, this Court should construe the critical vendor exception to the priorities established in the Bankruptcy Code narrowly. *In re Tropicana Sportswear*, 320 B.R. 17 (stating that because payment to certain critical vendors under such circumstances results in disparate treatment of unsecured claims, "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code") *Id.* Necessity no longer exists at this juncture and that undermines the entire premise of the Motion.

As to the third prong, the Committee has been grappling with whether "*disfavored creditors were at least as well off as they would have been had the critical-vendors order not been entered.*" *In re Kmart*, 359 B.R. at 873-74. The Committee cannot determine whether disfavored creditors would be better off or not with a validation of the deed of trust. Debtor asserts in its Motion that "Debtor believes all creditors will be in paid in full so elevating Cal By-Product's claim may have no net effect on the unsecured creditors." Motion at ¶9. While Debtor believes that it will be able to confirm a 100% plan, it is too early for the Committee to tell at this stage.

A key issue is whether or not the CWT funds that Debtor holds are subject o Wells Fargo's security interest. According to Debtor, it is holding $502,823.85 from the CWT Initial Payment of $1,121,781.15. If these funds are free and clear of Wells Fargo's security interest, then a large portion of these funds should be available to pay unsecured claims. The claims register shows a total of $342,374.44 in unsecured claims as of September 28, 2010. If the lien is avoided, Cal By-Products may hold an allowed general unsecured claim for approximately $240,000, which dilutes the pool and diminishes any pro rata distribution of the CWT funds available to pay unsecured claims. If the lien is not avoided and if there is a distribution through a Plan and Cal By-Products does not participate because its claim is secured by the real property which will be sold at a later date, it may inure to the benefit of the unsecured creditors. Thus, it is unclear whether or not

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

disfavored creditors will be better off without the granting of the deed of trust.

Nevertheless, based upon the foregoing, the Committee does not believe that Debtor has satisfied the three prongs for the critical vendor test as enunciated by the court in *Kmart*.1

## II. Post-petition "Catch Up" Payments to Cal By-Products Should be Disallowed and Disgorged

The Committee objects to any payments to Cal By-Products over and above the amount of feed it supplied on a post-petition basis. According to the Wells Fargo's Opposition, Debtor paid $72,441.54 to Cal By-Products on a post-petition basis but only received feed with a value of $11,221.07. This assertion is contradicted by the Ens Declaration wherein he asserts that Cal By-Products supplied feed with a value of approximately $54,000, but that still leaves an overpayment of $18,000. Ens Declaration at ¶13. If Debtor overpaid Cal By-Products by any amount, the payment should be disallowed and Cal By-Products should be required to disgorge those funds. Debtor's Motion does not seek to validate any such payments and there appears to be a dispute as to whether or not there was any agreement to catch up on the pre-petition debt on a post-petition basis. There is no evidence to support such payments.

## III. Cal By-Products Should be Bound by Its Election to be Treated as Secured

If the Court is inclined to validate this preferential lien, Cal By-Products should be limited to recovery through a sale of the Debtor's real property. In the event that Wells Fargo, which is allegedly in first position, were to proceed to foreclosure sale and wipe-out Cal By-Products' deed

---

1 The Committee points out that Cal By-Products cites to a slightly different test for critical vendor payments, asserting that the Ninth Circuit has not articulated a precise standard to evaluate a critical vendor motion. Docket No. 68 at 6:11-18. Under that test, "[f]irst, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim." *In re Berry Good, LLC,* 400 B.R. 741, 747 (Bankr. D. Ariz. 2008)(quoting *In re CoServ, LLC*, 273 B.R. 487, 498 (Bankr.N.D. Tex. 2002)). This test omits the third prong of *Kmart.*

-7-

of trust, then Cal By-Products should not be allowed a deficiency claim and permitted to participate in the unsecured creditor pool. It should be required to be bound by its election to be treated as a secured creditor rather than as an unsecured creditor.

### IV. Any Avoidance Actions Against Cal By-Products Should be Preserved

Per Debtor's Amended Statement of Financial Affairs, Cal By-Products was paid $223,198 by Debtor within the 90 days prior to the filing of the petition. See Debtor's Amended Statement of Financial Affairs, Docket No. 15, filed on July 22, 2010. To the extent that Debtor's motion attempts to validate these potentially preferential payments by designating Cal By-Products as a critical vendor, the Committee objects and no such relief should be granted.

### **CONCLUSION**

Based upon the foregoing, the Committee opposes the Motion.

DATED this October 20, 2010.

LAW OFFICES OF AMY N. TIRRE,
A Professional Corporation

By: /s/ Amy N. Tirre
Amy N. Tirre, Esq.

-8-

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, that I am over the age of 18 and not a party to the above-referenced case, and that on October 20, 2010 I served the **OPPOSITION TO DEBTOR'S APPLICATION TO APPROVE CAL BY-PRODUCTS AS CRITICAL VENDOR AND RATIFY LIEN GRANTED DURING PREFERENCE PERIOD** as indicated:

__X__          **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- U.S. TRUSTEE - RN - 11     USTPRegion17.RE.ECF@usdoj.gov
- KEVIN A. DARBY          kevin@darbylawpractice.com;  tricia@darbylawpractice.com; melissa@darbylawpractice.com; matthew@darbylawpractice.com; kendal@darbylawpractice.com; nicole@darbylawpractice.com
- CANDACE C. CARLYON    wapplegate@sheacarlyon.com; ccarlyon@sheacarlyon.com; bankruptcyfilings@sheacarolyn.com; rmsmith@sheacarlyon.com; ltreadway@sheacarlyon.com
- LOUIS M. BUBALA         lbubala@jonesvargas.com

_____          **BY HAND DELIVERY VIA COURIER**: by causing hand delivery of the Document listed above via Reno Carson Messenger Service to the persons at the addresses set forth below.

_____          **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 20 October 2010, with postage thereon fully prepaid in the ordinary course of business.

DATED this October 20, 2010.

           /s/ Andrea Black
An Employee of Law Offices of Amy N. Tirre