1  LOUIS M. BUBALA III, ESQ
Nevada Bar # 8974
2  JONES VARGAS
100 W. Liberty St, 12th Floor
3  P.O. Box 281
Reno, NV 89504-0281
4  Telephone: 775-786-5000
Fax: 775-786-1177
5  Email: lbubala@jonesvargas.com

6  Attorneys for Cal By-Products

| Electronically Filed on |
| October 27, 2010 |

7

8              UNITED STATES BANKRUPTCY COURT

9                    DISTRICT OF NEVADA

10  In re                              Case No.    BK-10-52539-gwz

11  A & A DAIRY, a California general   Chapter    11
    Partnership,
12                                      REPLY TO UNSECURED CREDITOR
          Debtor.                       COMMITTEE'S OPPOSITION TO
13                                      DEBTOR'S MOTION TO APPROVE
                                        CAL BY-PRODUCTS AS CRITICAL
14                                      VENDOR AND TO RATIFY LIEN
                                        GRANTED DURING PREFERENCE
15                                      PERIOD, WITH CERTIFICATE OF
                                        SERVICE
16  ─────────────────────────────
                                        Hearing Date:  11/3/10
17                                      Hearing Time:  2:00 p.m.

18          Cal By-Products ("CBP") replies to the opposition filed by the Unsecured Creditor

19  Committee ("Committee") to Debtor's motion to designate CBP as a critical vendor (Ct. Dkt. #81,

    filed Oct. 20, 2010).
20
            1.      It is undisputed that (1) Debtor agreed prepetition to designate CBP as a critical
21
    vendor to insure its postpetition delivery of feed to keep Debtor's cattle "fat and happy,"
22
    effectively maximizing Debtor's value, and (2) Debtor filed its motion to designate CBP as a
23
    critical vendor.  What is unresolved as part of this motion is (1) whether CBP qualifies as a
24
    critical vendor, and (2) if so, what benefit can CBP obtain as a critical vendor.
25
            2.      The Committee spends much of its opposition discussing the validity of the note,
26
    deed of trust, and certain payments provided by Debtor to CBP on a prepetition basis.  CBP
27
    recognizes that the Court may enter an order that does not ratify any of these transfers from
28

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1   Debtor to CBP as a critical vendor.  However, the purported invalidity of these transfers is not

2   before the Court as part of the critical vendor motion.  As Wells Fargo and CBP previously

3   acknowledged, any efforts to invalidate those transfers must be brought as an adversary

4   proceeding.  CBP asserts that it cannot be compelled to surrender or disgorge its property as part

5   of the critical vendor motion.

6          3.    CBP and the Committee do not agree as to the proper standard to evaluate a

7   critical vendor motion.  The Committee asserts the proper standard is identified by *In re Kmart*

8   *Corp.*, 359 F.3d 866 (7th Cir. 2004), and adopted by *In re Tropical Sportswear Int'l Corp.*, 320

9   B.R. 15 (Bankr. M.D. Fla. 2005).  In CBP's prior response brief, it cited the governing Ninth

10  Circuit law.  Ct. Dkt. #68, CBP Response at 6, *citing In re Adams Apple, Inc.*, 829 F.2d 1484,

11  1490 (9th Cir. 1987), *In re Hines*, 147 F.3d 1185 (9th Cir. 1998), and five orders from this Court

12  approving critical vendor motions.

13        CBP has not identified any decisions from the Ninth Circuit, its BAP or its district courts

14  addressing *Kmart*.  It only identified one bankruptcy decisions from the Ninth Circuit discussing

15  *Kmart*.  Ct. Dkt. #68 at 6, *citing In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. D. Ariz.

16  2008).  CBP cited and applied the test from *Berry Good*, showing the CBP qualifies as a critical

17  vendor.  The Committee recognizes the differences in the tests (Ct. Dkt. #81 at 6-7 & n.1).  The

18  Committee also concedes that Debtor's acceptance in the CWT program only occurred

19  postpetition:  "Hindsight is clearly 20/20 and that if necessity is determined on the date of the

20  filing of the petition, the Debtor and Cal By-Products' position may be well taken." (Ct. Dkt. #81,

21  at 5-6).  CBP believes that the determination of a critical vendor by its very nature must be made

22  at or before the petition date—and that CBP was a indeed a critical vendor on the petition date.

23        CBP also learned today of this Court's oral opinion regarding critical vendors in *In re*

24  *Stewart Hay Co.*, Case No. BK-B-09-50581 (D. Nev., Ct. Dkt. #18, filed April 24, 2009).  A copy

25  of the transcript is attached as **Exhibit 1**.  CBP believes its articulation of the governing law on

26  critical vendors is consistent with the oral order in that case, and that CBP is entitled to be

27  designated as a critical vendor under the standard set forth in *Stewart Hay*.

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor • P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1       4.     The Committee is unable to determine whether its members are better off with or

2 without CBP's lien.  In any event, the Committee requests that if the Court validates the lien but

3 that CBP's position is later wiped out in a foreclosure, "then Cal By-Products should not be

4 allowed a deficiency claim and permitted to participate in the unsecured creditor pool.  It should

5 be required to be bound by its election to be treated as a unsecured creditor rather than as an

6 unsecured creditor" (Ct . Dkt. #81 at 8).  CBP replies that this request is not properly before the

7 Court in this motion hearing.  CBP also replies that the Committee does not cite any authority at

8 all for such a proposition.  To be sure, courts have recognized a secured creditor's rights to either

9 (1) voluntarily abandon its security interest to instead participate as an unsecured creditor, or (2)

10 seek a reclassification of its claim to unsecured if its secured position is wiped out in a

11 foreclosure.  *E.g., Branch Banking & Trust Co. v. Coffia (In re Coffia)*, Case No. 09-50899, 2010

12 WL 1872878, *4 (Bankr. S.D. Ga. March 22, 2010), *citing* 11 U.S.C. § 502(j).  CBP asserts that

13 any dispute over its status as a secured or unsecured creditor must be resolved in a separate

14 proceeding subject to independent briefing.

15       DATED this 27th of October, 2010       JONES VARGAS

16

17                       By:       /s/ Louis M. Bubala III

18                           LOUIS M. BUBALA III, ESQ

                              Attorneys for Cal By-Products

19

20

21

22

23

24

25

26

27

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

**CERTIFICATE OF SERVICE**

1.    On October 27, 2010, I served the following document(s):

REPLY TO UNSECURED CREDITOR COMMITTEE'S OPPOSITION TO DEBTOR'S MOTION TO APPROVE CAL BY-PRODUCTS AS CRITICAL VENDOR AND TO RATIFY LIEN GRANTED DURING PREFERENCE PERIOD, WITH CERTIFICATE OF SERVICE

2.    I served the above-named document(s) by the following means to the persons as listed below:

■    a.    **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

CANDACE C CARLYON on behalf of Creditor WELLS FARGO BANK, N.A.
wapplegate@sheacarlyon.com,
ccarlyon@sheacarlyon.com;bankruptcyfilings@sheacarlyon.com;rmsmith@sheacarlyon.com;ltreadway@sheacarlyon.com

KEVIN A. DARBY on behalf of Debtor A & A DAIRY
kevin@darbylawpractice.com,
tricia@darbylawpractice.com;melissa@darbylawpractice.com;matthew@darbylawpractice.com;kendal@darbylawpractice.com;beth@darbylawpractice.com

CHRISTINE F. KENMORE on behalf of Creditor WELLS FARGO BANK, N.A.
ckenmore@hcesq.com

MARIA K. PUM on behalf of Creditor WELLS FARGO BANK, N.A.
mpum@hcesq.com

AMY N. TIRRE on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURRED CREDITORS
amy@amytirrelaw.com, admin@amytirrelaw.com

U.S. TRUSTEE - RN - 11
USTPRegion17.RE.ECF@usdoj.gov

☐    b.    **United States mail, postage fully prepaid** (list persons and addresses):

☐    c.    **Personal Service** (list persons and addresses):
I personally delivered the document(s) to the persons at these addresses:

☐    d.    **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

☐    e.    **By fax transmission** (list persons and fax numbers):

☐    f.    **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 27th day of October, 2010.

_____        _____
L. Bubala                                    /s/L. Bubala
Name                                         Signature

JONES VARGAS
100 West Liberty Street, Twelfth Floor - P.O. Box 281
Reno, NV  89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

# Exhibit 1

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In Re:                    .        Docket No. BK-N 09-50581-GWZ
                          .
STEWART HAY              .        Reno, Nevada
COMPANY, INC.,          .        March 25, 2009
                          .        10:19:05 a.m.
        Debtor.   .
. . . . . . . . . .

HEARING
ON MOTION BY DEBTOR FOR ORDER
AUTHORIZING THE PAYMENT OF NEVADA
HAY GROWERS ASSOCIATION PRE-PETITION
CLAIM PURSUANT TO 11 U.S.C. SECS 503(b)(9),
363(b) AND 105(a)
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GREGG W. ZIVE
UNITED STATES BANKRUPTCY JUDGE

Electronic Court Recorder:      Sylvia Tilton

Transcription:                  Typewrite Services Inc.
                                P.O. Box 5804
                                Sparks, Nevada 89432-5804

Proceedings recorded by digital sound recording, transcript
produced by transcription service.

APPEARANCES:

For the Office of the          WILLIAM B. COSSITT, ESQ.
U.S. Trustee:                  300 Booth Street, Ste. 2129
                               Reno, Nevada 89509

For Stewart Hay                Lewis and Roca, LLP
Company:                       BY: TRICIA M. DARBY, ESQ.
                               50 W. Liberty St., Ste. 410
                               Reno, Nevada 89501

1           THE COURT:  In the matter of Stewart Hay Company.

2           MR. COSSITT:  Bill Cossitt, Office of the United

3  States Trustee.

4           MS. DARBY:  Good morning, your Honor.  Tricia

5  Darby on behalf of Stewart Hay Company.

6           THE COURT:  All right.

7           I signed an order shortening time on March 18th,

8  as docket number 17, allowing this hearing to go forward.

9           Because it appears a sufficient finding was --

10  sufficient showing was made that the purchase of this hay

11  from this particular entity was critical to the ongoing

12  business of the debtor.  All right.

13          And the motion was brought pursuant to 503(b)(9)--

14  I think it's (b)(9)--which provides an administrative claim

15  if goods were delivered to the debtor within twenty days

16  prior to the date of the filing of the petition and it was

17  in the ordinary course of business.

18          And it's alleged that some twelve thousand one

19  hundred and fifty-six dollars and ninety-one cents is the

20  obligation incurred by the debtor for goods that were so

21  delivered.

22          Is that correct?

23          MS. DARBY:  That's correct, your Honor.

24          THE COURT:  Was there an affidavit that said that?

25          MS. DARBY:  You know, I don't believe that Mr. Kim

1   Stewart's affidavit said that.

2          THE COURT:  I mean you signed a declaration that

3   is hearsay on hearsay, so that one didn't -- wasn't of any

4   great help to me.

5          I thought I saw -- there's a declaration of Kim

6   Stewart, who is the president.  I've looked at that.

7          Your motion, by the way, was docket number 12

8   filed on the 17th of December;

9          The declaration of Mr. Stewart was docket number

10  13, also filed on the 17th.  And it's got nothing in here

11  about the timing.  So that -- I assume that I'm being asked

12  to accept that.

13         I did read a joint notice of non-opposition filed

14  by counsel for Jeffrey and Gregory Rogers and also for

15  Cindy Sloan; Katee Ann Sloan, a minor, by and through her

16  guardian ad litem; Cindy Sloan; Tyler Sloan; Kristy Sloan

17  and Brandee Sloan.

18         And just to make sure that the Rogers made it

19  clear to me that they did not oppose, they filed their own

20  notice of non-opposition.  One is docket 27 and one is

21  docket 29.  So I know the Sloans don't -- not only the

22  Sloans, but the Rogers, truly do not object.

23         And I'm not exactly sure who those folks are.  Are

24  they creditors?

25         MS. DARBY:  Yes, your Honor.  They are the

5

 1  plaintiffs in the wrongful death actions that have been

 2  brought against the debtor.

 3          THE COURT:  And of course they want to make sure

 4  that the debtor has the ability to satisfy any judgment

 5  that may be entered against it.

 6          MS. DARBY:  That is correct, your Honor.

 7          THE COURT:  All right.

 8          Now what you're asking -- I don't have any problem

 9  with the twelve thousand one hundred and fifty-six dollars

10  and ninety-one cents because it is an administrative claim,

11  assuming I would want a declaration from Mr. Stewart

12  establishing the basis for that.

13          And if that's filed then I will sign an order

14  regarding that.

15          The more difficult issue is the remaining amounts

16  that are due and owing to the supplier.  Because there's a

17  total of a hundred and sixteen thousand two hundred and

18  four dollars if I read your motion correctly.

19          MS. DARBY:  That is correct, your Honor.

20          THE COURT:  And so that after the twelve thousand,

21  what you really have is about a hundred and four thousand

22  that was delivered more than twenty days prior to the

23  filing of the petition.

24          Is that also accurate?

25          MS. DARBY:  That is correct, your Honor.

6

1          THE COURT:  And what is the basis for me paying

2     them?

3          You cited me to railroad reorganization cases.

4     B&W Enterprises, a decision of the Ninth Circuit which can

5     be found at 713 F.2d 534 (1983), specifically addressed the

6     railroad reorganization cases and said they weren't

7     applicable in that case.

8          And I can't find any case in the Ninth Circuit

9     that looks to those.

10         This is really a critical vendor motion once you

11    go outside the administrative claim period.  Is that

12    accurate?

13         MS. DARBY:  That's correct, your Honor.

14         THE COURT:  And you cite me all kinds of authority

15    from jurisdictions outside the Ninth Circuit.

16         Now let's take a look at the Ninth Circuit.  First

17    of all B&W Enterprises is really a 549 case.  When it was a

18    Chapter 11 there were certain contracts that were entered

19    into and certain payments that were made.

20         Then it was converted to a seven and the trustee

21    went back to get those.  It is a violation of Section

22    541 -- or 549, excuse me, for the reason that nobody ever

23    obtained a court order.

24         And since they didn't have a court order they said

25    well, it was necessary for us to continue to honor these

1   agreements in the defense and they just looked at the

2   railroad reorganization case and said no, not applicable.

3          This case is often cited for the proposition that

4   perhaps there's no basis for a critical vendor's order

5   because there was specific reference to a doctrine of

6   necessity.  And the doctrine of necessity was one of the

7   bases for the railroad reorganization cases.

8          However, there have been developments in the Ninth

9   Circuit and none of them are startling clear.

10          First of all there's <u>In re Adam's Apple</u>, a Ninth

11   Circuit case found at 829 F.2d 1484 (1987).  And it was

12   discussing 364(e) and what is good faith.  And really what

13   was there -- involved in that case was a cross-

14   collateralization issue, and it found that that was not per

15   se a violation of good faith.

16          And then they talked about -- and there's some

17   debate of whether or not the discussion--I think it's at

18   Page 1490--is dicta:

19          "Appellants assert as a general manner that CWB

20          failed to act in good faith because it intended to

21          secure an otherwise unsecured pre-petition claim

22          and because securing such a claim is improper

23          under the Bankruptcy Code."

24          And then it talks about cross-collateralization.

25   And then it talks about the arguments that appellants

1  advance:

2              "First appellants claim that the cross-
3              collateralization clause violates a fundamental
4              tenet in bankruptcy law that like creditors must
5              be treated alike, which is usually the opposition
6              to motions seeking to pay critical vendors.  That
7              it violates the priority scheme of the Code and
8              treats what would probably be similarly classified
9              creditors differently.  This argument is simply a
10             restatement of the general assertion that cross-
11             collateralization clauses are legal per se.    It
12             is flawed because the fundamental tenet conflicts
13             with another fundamental tenet, rehabilitation of
14             debtors, which may supersede the policy of equal
15             treatment.  Cases have permitted unequal treatment
16             of pre-petition debts when necessary for
17             rehabilitation in such contexts as pre-petition
18             wages to key employees, hospital malpractice
19             premiums incurred prior to filing, debts to
20             providers of unique and irreplaceable supplies and
21             peripheral benefits under labor contracts."  Cites
22             a case out of the Second Circuit and a Law Review
23             article at 54 Am. Jur. -- Am. Bankr. L.J. 173.
24             "In addition Congress provided in Section 364(d)
25             that in pre-petition debts even secured interest

1             may be subordinated by post-petition obligations.

2             Although this more traditional application of

3             364(d) does not involve disparate treatment of

4             creditors it illustrates a Congressional

5             willingness to subordinate the interest of pre-

6             petition creditors to the goal of rehabilitation."

7             And then it says:

8             "Cross-collateralization may provide the only

9             means for saving a failing company."

10         So the analogy would be critical vendors do the

11 same thing. And it's really akin to a doctrine of

12 necessity.

13         I do not consider that necessarily to be dicta.

14 Because the Court had to make that finding to get to the

15 holding that cross-collateralization did not violate the

16 Code.

17         And it talks about a fundamental tenet of rehab.

18         There's something in the Ninth Circuit that

19 said and, I've been told that take the belief that critical

20 vendor motions aren't allowed. I don't think they've read

21 this case.

22         Now there has also been developed in the Ninth

23 Circuit a doctrine of necessity that is outside of the

24 railroad reorganization cases. And that can be found in a

25 couple of cases;

 1          The first was In re Hines, 147 F.3d 1185 (9th Cir.

 2    1998).  And this had to deal with the payment of attorney's

 3    fees and allotted on a basis of a doctrine of necessity.

 4          And that was supported by another case, In re

 5    Sanchez, 241 F.3d 1148, a 2001 case citing to Hines and

 6    allowed attorney's fees paid that didn't strictly comply

 7    with the provisions of the Code on the basis of the

 8    doctrine of necessity and cited the Trednea (pho) case.

 9    And I've read that one as well.

10          That case -- I thought I had it in front of me.

11    But at any rate, that's at 264 BR 573.  It's a Ninth

12    Circuit BAP case in 2001.  And it's worth reading as well

13    on this point.

14          So I do believe -- well, in fact I do have it in

15    front of me.  That's another attorney's fees case that

16    cited Hines and quoted the doctrine of necessity.

17          So we have the Ninth Circuit, we have the BAP in

18    the Ninth Circuit recognizing the doctrine of necessity.

19    Not in instances that involve critical vendors.

20          But if you look at Adam's Apple where it said

21    cross-collateralization may be necessary to allow a debtor

22    to rehabilitate, certainly critical vendors it if's truly a

23    critical vendor, if it's something like a sole source and

24    even in the Capehart decision Judge Easterbrook in that

25    decision held that there was a higher burden of proof but

11

1  that it was possible to establish a basis for critical

2  vendors with a quantum of evidence.

3           Here the evidence and the only evidence that has

4  been provided to me would be that this is a sole-source

5  provider at this time because of the conditions that exist.

6           Is that correct?

7           MS. DARBY:  That is correct, your Honor.

8           THE COURT:  Yeah.

9           Now right now it's doing business with the debtor

10 on a COD basis.

11          Is that also correct?

12          MS. DARBY:  That is correct, your Honor.

13          THE COURT:  And the debtor can't afford to operate

14 on that basis.

15          MS. DARBY:  That is correct.

16          THE COURT:  That's all established by the

17 declaration.

18          Therefore I am going to grant the motion and allow

19 the payment of the hundred and four thousand dollars that

20 it would be outside the administrative expense provisions

21 of Section 503(b)(9) on the condition that -- what is the

22 name of this, NH --

23          MS. DARBY:  Nevada Hay Growers Association, your

24 Honor.

25          THE COURT:  Yeah.  -- Nevada Hay Growers

1  Association agrees to continue to do business with the

2  debtor on the preexisting credit, pre-petition credit

3  terms.    If it does not agree to do that it shall not be

4  paid.

5          Any problem with that, Mr. Cossitt?

6          MR. COSSITT:  None, your Honor.

7          I just spoke with debtor's counsel on a couple of

8  occasions because we were going to oppose, frankly, not

9  having a committee formed in time.

10          But once you look at the schedules and statements

11  there really are two creditors.  Those are the wrongful

12  death cases that are pending.  The rest of the creditors

13  are de minimis.

14          And once I found out that they were on board and

15  didn't oppose the motion, I'm not throwing up roadblocks

16  for anybody to --

17          THE COURT:  I'll take -- I don't think anybody

18  will review this case because nobody argues with the

19  ruling.  But I would take judicial notice of the schedules

20  and statements that would support the position that you

21  just articulated.

22          MR. COSSITT:  Thank you, your Honor.

23          MS. DARBY:  Thank you, your Honor.

24          THE COURT:  Prepare the order.  There does not

25  have to be any signature because there wasn't any -- .

1          But you need to take a look at the correct law.

2          MR. COSSITT:  And we need a declaration as well;

3    is that correct?

4          THE COURT:  Yeah.  I need that declaration.

5          MS. DARBY:  I will --

6          THE COURT:  Because right now I don't have any

7    evidence what occurred twenty days --

8          MR. COSSITT:  Right.

9          THE COURT:  I'm only going to allow the

10   administrative expense payment.  Of course it doesn't

11   really mat -- let's take -- I'd still want it just so it's

12   in the record.  All you have to do is file it.

13         Since I am going to allow the payment of the

14   remaining pre-petition claims it isn't critical, but I

15   think you can do one order.  And make that distinction

16   between the administrative claim and the non-administrative

17   claim.  I don't have a problem with that.

18         But file an affidavit from Kim Stewart that

19   supports the amount that will be in the order regarding the

20   administrative expense.

21         MS. DARBY:  I will do that, your Honor.

22         (Discussion off the record between the Court and the

23   courtroom deputy.)

24         THE COURT:  I've written this out before, I've

25   discussed it before.  This might be one where folks may

1  want to get a copy of this transcript to see how I approach

2  critical vendors.

3          MR. COSSITT:  Very good.

4          THE COURT:  I would just suggest that.  That way I

5  don't have to do it again --

6          MR. COSSITT:  Every time?

7          THE COURT:  -- and again and again.

8          And somebody did a good job of it in <u>Herbst</u>.

9          MR. COSSITT:  Yeah.  That's right.

10         THE COURT:  It was in a footnote I think on the

11 Chevron motion.  I could be wrong.  But we should pull that

12 out, too, to support it.

13         Because they did -- I had obviously given the same

14 analysis to Gordon & Silver and another firm because it's

15 nearly identical to what I just did.

16         MR. COSSITT:  Right.  One of these days we'll get

17 to litigate it maybe.  But --

18         THE COURT:  Well, you know, it would be nice to

19 get it resolved.

20         But -- and I remember I talked to like Renstadt

21 because he was -- a couple of years ago and he was

22 arguing -- we were discussing early on about critical

23 vendor motions.

24         And I remember Judge Wedoff from Illinois said

25 that he would never sign one.  Which he then did, of

15

1  course, in <u>United Airlines</u>.

2          And he justifies them under 363(b), outside the

3  ordinary course and the contracts.  And you can pick them

4  up.  He even employs ordinary course professionals under

5  that.  I don't think that that's -- I can't go that far.

6          MR. COSSITT:  Right.

7          THE COURT:  Especially if there are -- the debtor

8  has employed professionals on a salary.  That's provided

9  for right in 327 in any event.  So I don't think I'd go

10  there.

11          But Renstadt took the position -- and he's very --

12  you know, he argues most -- a lot of these bankruptcy cases

13  in the United States Supreme Court.

14          And he took the position that that language in

15  <u>Adam's Apple</u> was dicta.  Of course he was taking the

16  oppos -- he was taking a position opposite to <u>Adam's Apple</u>

17  on the panel we were on.

18          MR. COSSITT:  Um-hmm.

19          THE COURT:  So I would expect him to take that

20  position.

21          I'm not sure that it is.  But I don't know what

22  the Ninth Circuit -- how the Ninth Circuit would consider

23  it.

24          MR. COSSITT:  And you would need to know which

25  people were on the panel.

1          THE COURT:  Well, that's right.  And, you know,

2     and there are some very very good judges who don't believe

3     that there is.

4          But now with the changes go 503 and the changes

5     to, is it 546, the reclamation statute, we see much --

6     many -- we don't see nearly as many critical vendor motions

7     as we used to.

8          MR. COSSITT:  Right.

9          THE COURT:  And they still need to be difficult.

10    And Easterbrook in <u>KMart</u> allowed them in certain

11    situations.

12         I had to go through that and I triggered that.

13    <u>London Fog</u> I had to go through all of that.

14         MR. COSSITT:  Right.  And that's a case where it

15    really makes a difference is if you're in an

16    administratively insolvent case and you don't get out of

17    the critical venue problem by going to the administrative

18    claim problem.

19         THE COURT:  Well, that was --

20         MR. COSSITT:  So.

21         THE COURT:  It's a real issue.

22         MR. COSSITT:  Yeah.

23         THE COURT:  But they didn't take that particular

24    part up, or they settled it.  I can't remember.

25         MR. COSSITT:  Yeah.  Well, all of it got settled

 1  now.  So that's been --

 2          THE COURT:  I think that's true.  It has been now.

 3          MR. COSSITT:  Yeah.

 4          THE COURT:  But at any rate, no.  I would like to

 5  see it resolved.

 6          A case that I entered a ruling on that got

 7  affirmed by the district court and affirmed by the Ninth

 8  Circuit, yesterday or the day before the United States

 9  Supreme Court denied cert on it.  And that was in N.C.P.

10  and Blanks.

11          And they were --

12          MR. COSSITT:  Oh, good.

13          THE COURT:  They were going to try to take the

14  catapult issue up, but cert was denied.

15          MR. COSSITT:  Why don't they issue the <u>Green</u>

16  opinion.

17          THE COURT:  Excuse me?

18          MR. COSSITT:  I don't know why they don't issue

19  the <u>Green</u> opinion.  That's been sitting up there over a

20  year.

21          THE COURT:  You know, it's a tough one.

22          MR. COSSITT:  Apparently they're struggling with

23  it, because they haven't issued it.  So --

24          THE COURT:  No matter what they say I'm going to

25  convinced I'm correct.

18

1         No, no.  I know when I'm wrong.  That to me, I
2  don't know how you can allow a person to have a homestead
3  if they're not living there.  It's that simple to me.
4         MR. COSSITT:  Okay.
5         THE COURT:  And you can do all -- I know the
6  claims and the interest and what the University of Michigan
7  said.  But you -- and it doesn't do you any good to cite to
8  the law of Florida or Iowa or Texas or any of the other
9  states that have unlimited homestead.  Because they're not
10  talking to equity.  There it's really a prop -- here the
11  homestead exemption is a matter of equity.
12         MR. COSSITT:  Right.
13         Can we go off the record for a second?
14         THE COURT:  Yeah.  Let's go off.
15     (Proceedings concluded at 10:37:04 a.m.)
16
17
18
19                      CERTIFICATE
20
21         I certify that the foregoing is a correct
22  transcript from the digital sound recording of the
23  proceedings in the above-entitled matter.
24
25  /s/ Marjorie G. Davall              April 24, 2009